OPINION
{¶ 1} On June 22, 1999 and thereafter, appellants, Abbas and Noushin Fallah, entered into three contracts with appellee, Robert Sochor, dba RJS Builders Construction Services, for the construction of a residence. On September 25, 2001, appellants filed a complaint against appellee claiming breach of contract for failure to complete the project.
 {¶ 2} A jury trial commenced on September 8, 2003. The jury found in favor of appellants in the amount of $84,072.31.
 {¶ 3} On September 25, 2003, appellee filed a motion for judgment notwithstanding the verdict or in the alternative, motion for new trial and motion for remittitur. By judgment entries filed November 19 and December 12, 2003, the trial court granted a new trial on the issues of damages.
 {¶ 4} Appellants filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 5} "The trial court committed prejudicial error in ordering a new trial on the issue of damages."
 I {¶ 6} Appellants claim the trial court erred in ordering a new trial on the issue of damages. We agree.
 {¶ 7} The granting of a new trial rests in the sound discretion of the trial court. Civ.R. 59. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely and error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 8} In its December 12, 2003 judgment entry, the trial court granted the motion for new trial on damages, finding "Plaintiffs presented to the jury an improper argument as to the calculation of contract damages, and that the jury awarded contract damages in an amount not recoverable under the instructions of law this Court gave to it."
 IMPROPER ARGUMENT DURING CLOSING ARGUMENT {¶ 9} In its motion for new trial at 17, appellee argued a chart employed by appellants during closing argument contained an "incorrect calculation and the numbers supporting it," including a "false statement of a $59,000 `overpayment'." Appellee argued this chart misled and prejudiced the jury to award an improper amount for damages.
 {¶ 10} We have no record of what was on this "chart" used during closing argument. We have only the transcript of the closing argument to review. Appellants' counsel specifically stated the request for damages did not include their inconvenience for the sixteen to eighteen month delay "from the time of the contract until the time of occupancy." T. at 1176. The argument centered upon damages as a result of failing to complete the project per the September 2000 contract, the Daneman Contract. Appellants' counsel argued all damages flowed from this breach. By way of illustration, appellants' counsel asked the jury to examine Joint Exhibit 12 in light of Joint Exhibits 11 and 13 in an effort to assess damages. T. at 1178-1182. Appellants' counsel further argued additional bank interest accrued as a result of the breach of the Daneman contract. T. at 1182-1183. Appellants' counsel pointed out that the Daneman contract clearly mentioned only one outstanding change order remained incomplete. T. at 1186. Appellants' counsel argued according to witness testimony, the project was eighty percent complete at breach. T. at 1188. This eighty percent completion did not include change orders. Id. Appellants' counsel used this eighty percent figure to determine what appellee would be due regardless of "change orders." T. at 1189.
 {¶ 11} Although a chart may have been in the courtroom during closing argument, we find appellants' counsel's closing argument was based upon the evidence submitted, Joint Exhibits 10, 11, 12 and 13, and the eighty percent completion testimony presented via a bank witness. Only once during the closing argument was there a vague reference to some possible chart:
 {¶ 12} "I'll show you this one more time ladies and gentlemen, and I'm going to conclude. The $450,000 original contract, include allowances. $92,985 in allowances, an amount to be paid for materials and labor, 3 57 15, 80 percent estimate from the bank. That amount should have been paid, the amount that was paid, the other payment, minus the allowances that were provided right here, brings us to this total. I've gone over the other numbers with you before ladies and gentlemen, I won't do that again. Comes to a figure, this is primary evidence that's been agreed to. Their own witness, 80 percent completion." T. at 1215.
 {¶ 13} An objection was not made during closing argument. On its own initiative, the trial court provided a specific instruction relative to the proper measure of damages:
 {¶ 14} "The court was concerned that in final arguments, the measure of improper — improper measure of damages was set before the jury. The court feels also it is incumbent upon the court to try to correct this situation. What I have proposed I'm going to do in page 10 in my discussion of damages, in the jury instructions, I have inserted the following: mindful of those principles, you are instructed that when a construction contract has been breached, the proper measure of damages is the reasonable cost of completing the building to the condition contemplated by the parties had the contract been performed plus any allowances, credits, charges interests or lost profits the parties may be entitled to, pursuant to the contract. Any statement you may have heard during final arguments for the measure of damages you must disregard." T. at 1218-1219.
 {¶ 15} Thereafter, the trial court elaborated on the proper measure of damages in its instructions to the jury. T. at 1236-1238. The trial court also instructed the jury on the fact that arguments of counsel "are designed to assist you here but are not evidence." T. at 1224.
 {¶ 16} Based upon the record before us, we find a new trial was not warranted based upon an improper closing argument on damages.
 DAMAGES AS A MATTER OF LAW {¶ 17} In its December 12, 2003 judgment entry, the trial court concluded the jury verdict of $84,072.31 was "an amount not recoverable under the instructions of law this Court gave to it." As cited supra, the trial court instructed the jury that the proper measure of damages "is the reasonable cost of completing the building to the condition contemplated by the parties had the contract been performed * * *." T. at 1218.
 {¶ 18} The jury verdict was a general verdict. Interrogatories were not given, which would have helped this court understand the jury's reasoning.
 {¶ 19} By using the eighty percent completion theory on a $450,000 contract, the amount to complete the home would be $90,000. As argued by appellants, one change order remained outstanding after the Daneman contract of September 2000. Using the remaining fixture allowance and subtracting it from the $90,000 would leave $81,500.
 {¶ 20}
 {¶ 21} With the luxury of the written transcript, it is very easy to decipher how the jury arrived at the verdict. Joint Exhibit 12 contains items uncompleted at the time of breach in the amount of $55,752.64. T. at 1180-1181, 1190. The exhibit also lists a balance of $9,053.97. Plaintiff's Exhibit 14 is the punch list items and they amount to $14,815.15. T. at 1190. A custom home builder, Thomas Erlenbusch, testified to $2,960 left to be completed which was not included on Joint Exhibit 12 or Plaintiff's Exhibit 14. See, Plaintiff's Exhibit 15.
 {¶ 22} We find the verdict to be supported in the record via Plaintiff's Exhibits 14 and 15 and Joint Exhibit 12, all of which contain the costs for the completion of the home after appellee's breach. Upon review, we conclude based upon the reasons cited by the trial court, the trial court erred in granting a new trial on damages.
 {¶ 23} The sole assignment of error is granted.
 {¶ 24} The judgment of the Court of Common Pleas of Delaware County, Ohio is hereby reversed.
Farmer, J., Hoffman, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Delaware County, Ohio is reversed.